GURDON C. JUDSON *vs.* WESTERN RAILROAD CORPORATION.

If anything remains to be done by the consignor of goods or his agents after their delivery
    to a railroad company, before they are ready for transportation, the company are only
    responsible for them as warehousemen, and not as common carriers.

If an arrangement or course of business exists between two railroad companies whose roads
    are upon the same general route, but do not actually connect with each other, by which
    goods, which have been carried to the termination of one road, and are destined to some
    point upon or beyond the line of the other, are delivered to the second company with a
    bill of the expenses already incurred, from which, if found to be correct, a way bill is
    made out, the second company are only responsible as warehousemen, and not as com-
    mon carriers, for goods so received and stored by them, until the delivery of the bill of
    expenses.

CONTRACT in which the plaintiff seeks to charge the defend-
ants as common carriers, for the loss of a quantity of dressed
deer skins, which were in the defendants' freight depot at East
Albany on the evening of the 5th of July 1861, when it with all
its contents was destroyed by an accidental fire.

At the trial in the superior court, before *Vose,* J., the jury re-
turned a verdict for the plaintiff, and the defendants alleged ex-
ceptions. The facts are stated in the opinion.

*J. D. Colt,* for the defendants, cited Redfield on Railways,
247, 248, 282, 292; *Spade* v. *Hudson River Railroad,* 16 Barb.
383; *Simpkins* v. *Norwich & New London Steamboat Co.* 11
Cush. 102; *Merriam* v. *Hartford & New Haven Railroad,* 20
Conn. 334; *Van Santvoord* v. *St. John,* 6 Hill, (N. Y.) 157; *Far-
mers' & Mechanics' Bank* v. *Champlain Trans. Co.* 18 Verm. 140;
*Fitzsimmons* v. *Joslin,* 21 Verm. 140.

*H. Morris,* for the plaintiff. The goods were delivered to and
received by the defendants for immediate transportation, and
the defendants were liable for them as common carriers. An-
gell on Carriers, § 129. Redfield on Railways, 246, 247. *Fitch-
burg & Worcester Railroad* v. *Hanna,* 6 Gray, 541. *Blossom* v.
*Griffin,* 3 Kernan, 569. The delivery of the expense bills was
not essential to put the goods in a condition for immediate
transportation, or to inform the defendants where they were to
be carried, or to whom delivered. The direction on the boxes

was sufficient for the latter purposes. Nor was any entry on any way bill or book necessary to make the delivery perfect and charge the defendants as carriers. Angell on Carriers, § 136. Redfield on Railways, 248. *Cole* v. *Goodwin*, 19 Wend. 254. The usage of the defendants in reference to the expense bills was for the convenience of the two railroads, and not for that of the consignee. The only importance of these bills was, to enable the defendants to settle with the Central Railroad, and to collect the freight earned on that road ; but the obligation of the defendants to carry the goods was independent of their obligation to do these things. And if the defendants, either for their own convenience, or by reason of business arrangements with the Central Railroad, would not forward the goods until the expense bills were received, inasmuch as the delay was not for the convenience of the owner, they were bound to keep the goods safely as common carriers, until they were ready to forward them. *Moses* v. *Boston & Maine Railroad*, 4 Fost. (N. H.) 71. *Camden & Amboy Railroad* v. *Belknap*, 21 Wend. 354. *Blossom* v. *Griffin*, 3 Kernan, 573.

MERRICK, J. It is undoubtedly a general rule, that the liability of a common carrier for goods received by him begins as soon as they are delivered to him, his agents or servants, at the place appointed or provided for their reception, when they are in a fit and proper condition and ready for immediate transportation. Redfield on Railways, 246. But, like all other general rules, it is subject to modifications resulting from the express stipulations of the parties, or from the course and usages of trade and business. And as it sometimes happens that a party is at once a warehouseman and a carrier, and that goods received by him are lost and destroyed before they are put *in itinere*, a very important question may in such case arise whether the receiver is liable in the one or the other capacity ; for his responsibility is not co-extensive in each of those relations. Story on Bailments, § 535. This must always be a question of fact, to be determined upon proof of the actual and surrounding circumstances, the material point of inquiry being whether the one or the other character predominated in the

particular stage of the transaction when the disaster occurred. Ib. § 536. There are well settled rules which will afford some aid in the solution of such a question. If a common carrier receives goods into his own warehouse for the accommodation of himself and his customers, so that the deposit there is a mere accessory to the carriage and for the purpose of facilitating it, his liability as a carrier will commence with the receipt of the goods. Ib. § 536. *Fitchburg & Worcester Railroad* v. *Hanna,* 6 Gray, 539. But, on the contrary, if the goods when so deposited are not ready for immediate transportation, and the carrier cannot make arrangements for their carriage to the place of destination until something further is done or some further direction is given or communication made concerning them by the owner or consignor, the deposit must be considered to be in the mean time for his convenience and accommodation, and the receiver until some change takes place will be responsible only as a warehouseman.

These being the rules by which the rights of the parties are to be determined, it can of course make no difference by whom the property is delivered, whether it be by the owner himself or by his agent or servant, nor whether that agent be himself a carrier or acts in any other capacity. It is the paramount duty of a common carrier to receive and carry all goods offered him for transportation, upon the payment or tender of a suitable fare or compensation; and he must so receive them, by whomsoever they are brought to the place where he makes arrangements to receive them for transportation. Story on Bailments, § 508. It is upon this principle, where no special obligation is imposed by acts of legislation, that one corporation whose railroad connects with, or is near to, the termination of the railroad of another corporation, is obliged to accept and receive for transportation any goods which may be brought and tendered to it by the servants of the latter. But in this as in all other cases the party bringing the goods must first do whatever is essential to enable the carrier to commence, or to make needful preparations for commencing, the service required of him, before he can be made liable or subjected to responsibility in that capacity. When

goods are received by a railroad company which are to be trans ported to a place beyond their own road over a railroad which connects with theirs, or over successive roads or lines of trans- portation, each company will be responsible for them while in its own possession, and will not be liable for any loss which may occur after a due delivery of them upon another line and to another carrier. *Nutting* v. *Connecticut River Railroad*, 1 Gray, 502. If after being once laden for carriage they are trans- ported over successive roads in the same car or vehicle without being shifted or changed from one to another, the successive car- riers, as they severally receive them, will be liable for the goods in that capacity, as soon as delivered; so that during the whole transit or journey some one will be constantly liable for them as a common carrier. But it is otherwise when one has performed his whole duty as a carrier, and has relieved himself from all liability in that capacity by depositing the goods at the end of the journey in his own warehouse, from which they are to be taken by the owner or consignee, or by other carriers who are to continue the transportation to a still distant point. In such case, the liability of a warehouseman will succeed, and will continue until they come into the possession of some one who is respon- sible as a common carrier. *Norway Plains Co.* v. *Boston & Maine Railroad*, 1 Gray, 263. *Garside* v. *Trent & Mersey Navi- gation Co.* 4 T. R. 581. *Hyde* v. *Trent & Mersey Navigation Co.* 5 T. R. 389. *Denny* v. *New York Central Railroad*, 13 Gray, 481. And so it may occur that one party will be liable only as a warehouseman after he shall have completed all the services in the way of transportation which can be required of him, and another liable only in the same relation before the farther transportation has commenced, or before he has become responsible in another and distinct relation.

In applying these principles to the facts which were developed upon the trial of the present action, there is no difficulty in de- termining what are the rights and obligations of the parties. From the statements in the bill of exceptions, it appears, that the plaintiff's goods, contained in two boxes marked " G. C. Judson, Springfield, Mass., by railroad," were delivered at Fonda

in the State of New York, to the New York Central Railroad Company for transportation. That company gave to the plaintiff upon receiving the goods a "shipping receipt," by the terms of which they agreed to transport them to their warehouse at Albany, to be there delivered to the party then entitled to receive them. The defendants' road was the connecting line over which the transportation of the goods was to be continued to the plaintiff at Springfield. But the two railroads do not unite by coming into any actual connection with each other. The former terminates at its freight house in the city of Albany on the western side, and the latter terminates at its freight house on the eastern side of the Hudson River. So that goods which are brought over the road of the former company and are to be carried forward to some point or station on the road of the latter must be unladen from the cars in which they are brought to Albany, and carried across the river and deposited in the freight house of the Western Railroad, and there be again laden in their cars. While remaining in their warehouse, the goods may therefore be in their possession as warehousemen. Whether they are liable in that capacity, or as common carriers, must be determined upon the facts relating to each particular transaction.

It appears from the evidence produced at the trial that by the course of business between these two roads it is the practice of the Central road, upon the arrival of freight from points on the line of its road destined for points on the line of the Western Railroad, to make out bills called expense bills, containing the freight charges of the Central road upon each parcel or lot of freight, and to send the goods by carmen with the expense bills across the river to the freight house of the Western Railroad where the goods are compared by the agents of the latter road, and if found to be correct are checked and handed to a clerk who enters them on the books of freight received, from which the way bills are made out. Upon the arrival of the plaintiff's goods at Albany, they were sent across the river by the New York Central Railroad Company in the usual manner, and were delivered at the freight house of the defendants at the

usual place of depositing such freight, and notice thereof was given to their proper servants. Upon the question whether the expense bills were delivered to any such agent or servant before the loss and destruction of the goods by the fire which occurred while they remained in the freight house, the evidence was conflicting and contradictory. The defendants requested the court to instruct the jury, that, in view of the course of business and usage between the two roads, although the goods were delivered to the proper agent of the defendants, yet if the expense bills were not also delivered before the occurrence of the fire, by which they were destroyed, the goods were not in condition for immediate transportation, and the defendants were therefore liable only in their capacity as warehousemen. To this request, the court declined to accede.

The general instructions which were given to the jury respecting the liability of the defendants and the capacity in which they were liable, whether as carriers or as warehousemen, were correct. But it is apparent from the uncontested evidence in the case that, according to the usage and the general course of business and from the regulations established by the two companies, until the expense bill was furnished to the defendants, the goods delivered at their freight station were not in condition for immediate transportation. That document was indispensably necessary to them, to enable them to undertake the transportation of the goods. It was indispensable in order to identify the package or parcel to be carried, and also to show the amount of the lien upon them in favor of the Central company for the previous transportation from Fonda to Albany, and for which, upon accepting them, the defendants by the usage between the two companies would become responsible; and it afforded the only means by which they could make out their own freight bill, or know what disposition was to be made of the goods, or what was the place of destination to which they were to be carried. Until that instrument was sent to them, they could make no arrangement for the transportation of the goods; and because they were not for want of it ready to be immediately transported, the defendants could only suffer the

boxes to remain in the freight house for the convenience and accommodation of the owner or consignor, until he or his agents should give them the information and directions which were indispensable to enable them to take any action in reference to the goods. In the mean time, from the very nature and provisions of the arrangement adopted by the two companies, the defendants necessarily held and had possession of the goods merely as warehousemen; for they could under such circumstances have charge of them only in their latter capacity. If the expense bill was delivered to them simultaneously with the delivery of the goods, or if afterwards and before the occurrence of the fire by which they were destroyed it had been duly delivered to any of their agents or servants, the goods would have been in condition for immediate transportation, and their liability as carriers would thereupon have at once attached. But before that was done, their responsibility was of a different and more limited character. The instructions asked for ought therefore to have been given to the jury, who would thereby have been brought directly to the determination of the question in controversy between the parties, and respecting which the evidence was conflicting and contradictory. If upon that evidence the jury should find that the expense bill was delivered to the defendants before the fire occurred, they would have been liable as carriers, but otherwise as warehousemen only.

It is obvious that in the conduct of business of such magnitude, and in the care and transportation of the great number and variety of goods and packages which are continually passing from one railroad to another over any great line of travel and transportation, there must be some general and certain and well understood arrangement between the proprietors of the connecting roads to avoid inextricable confusion, and to enable the carriers to protect both their own rights and the rights of their customers. The arrangement which these two companies made, and which was fully proved at the trial, appears to have been a reasonable and necessary provision; and therefore it was one to which all parties were bound to conform; and consequently the defendants have a right to insist that their liability shall not

be extended in any particular instance beyond the obligation which such conformity imposes upon them. For these reasons their exceptions to the ruling of the court must be sustained, and a new trial ordered.