# Hofford *v.* New York Central & Hudson River Railroad Company, Appellant.

*Bailment—Carriers—Warehouseman—Degree of care—Burden of proof—Measure of damages.*

1. Where a railroad company accepts the baggage of an intending passenger and deposits it in the place provided by the company for the purpose of checking and for safe-keeping, and subsequently the passenger changes his mind as to making the journey, and without having bought a ticket, goes for his baggage which is not forthcoming, and it appears that the company in the course of its business charged storage where there was such a change of intention, the company is not a gratuitous bailee of the baggage, and the burden is upon it, whether it is in the position of a carrier or warehouseman, to show that the baggage was not lost through its own negligence. Mere proof that the baggage had been placed in a proper building, in charge of trusty servants, and properly guarded, is not sufficient to rebut the presumption of negligence arising from the nondelivery of the baggage to its owner.

2. In such a case the railroad company is in the position of a warehouseman under the laws of New York, and the law of New York approved June 6, 1907, and known as the "Public Service Commissions Law of New York," limiting the amount of liability by a carrier for baggage to $150 has no application.

3. Where baggage is left with a carrier in anticipation of a journey not about to be commenced, and to be called for and checked when the passenger is ready to begin his journey, the carrier is liable therefor as a warehouseman only.

4. In a suit against a carrier for the loss of clothing contained in a trunk, the measure of damages is not the amount which the clothing would bring if put into the market and sold for secondhand clothing. The rule is the value of the clothing for use by the owner.

Argued Dec. 15, 1909. Appeal, No. 241, Oct. T., 1909, by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1907, No. 4,980, on verdict for plaintiff in case of Mary A. Hofford *v.* New York Central & Hudson River Railroad Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for the loss of a trunk and its contents. Before MAGILL, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Under my view of the law of New York, gentlemen, I charge you that the relation of the parties in this case was that of bailor and bailee and that the duty which the defendant owed to the plaintiff was that of a warehouseman, in view of the fact that the trunk was delivered to and received by the defendant to await further orders from the plaintiff before shipment, and not for immediate transportation for one who, by the purchase of a ticket, had established the relation of passenger over the defendant's road.] [1]

[If you determine that the plaintiff is entitled to a verdict and if you shall find further that the value of the trunk and its contents was less than $1,007.50 then the loss of the plaintiff having been sustained in 1907, in August, and the money, if any, therefore due the plaintiff at that time by reason of the loss, she would be entitled to compensation for the delay in the payment of the money. That is to say, if you shall find that the value of the property was $300, $500, $200 or any other sum, $700 or any sum less than $1,007.50, you would be entitled to add to that sum by way of compensation for delay in payment, something as such compensation, which, however, in no event should exceed the usual rate of interest for money. But if you shall find that the value is less than $1,007.50 and desire to add to that compensation for delay, in no event should the total amount which you award the plaintiff, if you find a verdict in her favor, exceed the amount of her claim for which she sued, $1,007.50.] [2]

Plaintiff presented these points:

1. If goods are delivered to a carrier, not for immediate transportation (but to be retained by it) until further orders are received from the owner, the carrier becomes

a mere depository or bailee until such further orders are given. If, therefore, you believe from the evidence that the plaintiff delivered her trunk to the defendant company, not for immediate transportation but to be retained by it, until further orders should be given by her, then the defendant received said trunk as a warehouseman. *Answer:* I have already stated that in my general charge and I affirm that point. [3]

2. Where a bailment is reciprocally beneficial to both parties, the law requires ordinary diligence on the part of the bailee and makes him responsible for ordinary neglect. The maintenance of a baggage room for the baggage of persons using the railroad was an ordinary incident of the business in which the defendant company was engaged. If, therefore, you believe from the evidence that the defendant company failed to exercise ordinary and reasonable prudence in the care of plaintiff's trunk, your verdict must be for the plaintiff. *Answer:* I affirm that point. [4]

3. The defendant company, as bailee of the plaintiff's trunk, is bound either to produce the same or account for its loss. The burden of proof is upon the defendant company to explain the manner in which the trunk was lost, and, if it cannot do so, the presumption is that it was lost through the negligence of the defendant company, or its servants. *Answer:* I affirm that point. [5]

5. If you find for the plaintiff, she is entitled to recover the value of her trunk and also the full value of her clothing, contained therein for use by her and not what it merely could be sold for in money. *Answer:* That is affirmed. [6]

Defendant presented these points:

2. Under the law of New York, it was the duty of the plaintiff when delivering her trunk to the defendant, to disclose to the defendant its value. Unless she did so, she cannot recover in this case more than $150. *Answer:* That is the vital question in this case but I decline at this time to affirm that point. [7]

3. Under the evidence in this case plaintiff cannot re-

cover from the defendant more than $150. *Answer:* That I decline. [8]

4. Under the law of New York, the only obligations assumed by the defendant with respect to plaintiff's trunk were those of public common carriers. Defendant assumed no obligation as a warehouseman. *Answer:* That I decline. [9]

Verdict and judgment for plaintiff for $1,007.50. Defendant appealed.

*Errors assigned* were (1–9) above instructions, quoting them.

*James Wilson Bayard,* with him *John G. Johnson,* for appellant.—The appellant was not, under the law of New York, a warehouseman with respect to appellee's trunk.

Appellant was at most, under the law of New York, liable as a common carrier with respect to appellee's trunk; and as such common carrier its liability, the value of the trunk and contents not having been declared, is limited to $150: Orange County Bank v. Brown, 9 Wend. 85; Tewes v. North German Lloyd S. S. Co., 186 N. Y. 151 (78 N. E. Repr. 864); Hurwitz v. Packet Co., 56 N. Y. Supp. 379; Bell v. Drew, 4 E. D. Smith, 59; Nevins v. Steamboat Co., 17 N. Y. Super. Ct. 225; McCormick v. Hudson River R. R. Co., 4 E. D. Smith, 181; Baum v. Ry. Co., 108 N. Y. Supp. 265; Richardson v. Woolverton, 117 N. Y. Supp. 908.

Appellant was in reality a gratuitous bailee of appellee's trunk, and not having been shown guilty of any negligence, is free from liability for the loss thereof.

*A. L. Moise,* of *Sharp, Alleman & Moise,* for appellee.—Defendant was liable as a warehouseman: London, etc., Fire Ins. Co. v. Rome, etc., R. R. Co., 144 N. Y. 200 (39 N. E. Repr. 79); National Line Steamship Co. v. Smart, 107 Pa. 492; Moyer v. R. R. Co., 31 Pa. Superior

Ct. 559; Murray v. International Steamship Co., 170 Mass. 166 (48 N. E. Repr. 1093); Goodbar v. Ry. Co., 53 Mo. App. 434; Fairfax v. R. R. Co., 67 N. Y. 11; Burnell v. R. R. Co., 45 N. Y. 184; Hoyt v. Clinton Hotel Co., 35 Pa. Superior Ct. 297.

The measure of damages was properly stated: Fairfax v. R. R. Co., 73 N. Y. 167.

OPINION BY RICE, P. J., July 20, 1910:

On the afternoon of August 2, 1907, the plaintiff, who was then temporarily stopping at the Imperial Hotel in New York city, sent her dress suit case and trunk to the Grand Central station of the defendant in that city. They were delivered to the defendant's baggage agent, who gave separate receipts for each, and placed in the outgoing baggage room where trunks are ordinarily taken to be checked. No instructions were asked for by the defendant, nor any given by the plaintiff, either at the time the trunk and suit case were so delivered, or subsequently, as to their destination; nor had she instructed the express agent to put any value on the trunk or suit case, and no statement of value was given to or asked for by the defendant's baggage agent. At the time the baggage was delivered to the defendant the plaintiff intended to go from New York city to a place called New Rochelle, which is on the New York, New Haven & Hartford Railroad, spend the night there, return to New York city the next day, and purchase a ticket and have the trunk checked to a place called Catskills, which is on one of the defendant's lines. Nothing was said, however, to the defendant's baggage agent of this intention, and she had not and did not afterwards purchase a railroad ticket from the defendant. During the same afternoon she changed her mind and abandoned her trips to New Rochelle and to Catskills. The next day she went to get her baggage. The dress suit case was delivered to her, but the trunk was not. Diligent search was made for it, but it was never found. The plaintiff then brought this action to recover

the value of the trunk and its contents, which, as she stated them at the trial, aggregated $1,188.50. The learned trial judge charged the jury that under the law of New York the relation of the parties was that of bailor and bailee, and that the duty which the defendant owed to the plaintiff was that of a warehouseman, in view of the fact that the trunk was delivered to and received by the defendant to await further orders from the plaintiff before shipment and not for immediate transportation for one who by the purchase of a ticket had established the relation of passenger over the defendant's road. He furthermore charged, in affirming plaintiff's second point, that the maintenance of a baggage room for the baggage of persons using the railroad was an ordinary incident of the business in which the defendant company was engaged and that, therefore, if the jury believed from the evidence "that the defendant company failed to exercise ordinary and reasonable prudence in the care of the plaintiff's trunk their verdict must be for the plaintiff." The instructions upon the question of the defendant's negligence did not end here, but by the affirmation of the plaintiff's third point the jury were instructed that the defendant as bailee of the trunk was bound either to produce the same or account for its loss. "The burden of proof," quoting from the point, "is upon the defendant company to explain the manner in which the trunk was lost, and if it cannot do so the presumption is that it was lost through the negligence of the defendant company or its servants." The verdict was in favor of the plaintiff in the sum of $1,007.50, that being the amount claimed in the statement, and from the judgment thereon this appeal was taken.

The defendant contends on this appeal for three propositions: 1. The defendant was not under the law of New York a warehouseman with respect to the plaintiff's trunk; 2. It was at most, under the law of New York, liable as a common carrier with respect to the trunk, and as such common carrier its liability, the value of the trunk and contents not having been declared, is limited to $150;

3. It was in reality a gratuitous bailee of the trunk, and not having been shown guilty of gross negligence is free from liability for the loss thereof.

Was the defendant a gratuitous bailee? In determining this question the fact must not be overlooked, although it was not expressly announced to the defendant, that the plaintiff was an intending passenger and that the place at which the trunk was delivered to and accepted by the defendant's baggage agent was provided by the defendant for the reception and checking of baggage of intending passengers and for the storage of the same for the reasonable time that commonly intervenes before the passenger purchases his ticket and has his baggage checked. According to the testimony of the defendant's witnesses the intending passenger who has delivered baggage at that place has twenty-four hours within which to obtain his ticket and have the baggage checked, without charge for storage. If the baggage is not checked within that time storage is charged, and in the ordinary course of business the same is done if the owner, having changed his mind as to going upon the journey, calls to take the baggage away. We quote from the testimony of the station baggage master upon this subject: "Q. In your long experience as baggage master there you have had many cases where people have sent their baggage there to the road and then countermanded it and taken it away without sending it out on a ticket, haven't you? A. It has been done; yes, sir. Q. Well, if a person sends baggage there to your road and it remains there for more than twenty-four hours and from a change of mind of the intending passenger they recall the baggage, it is customary to charge a storage, isn't it? A. Yes, sir. Q. If they come with a ticket within twenty-four hours you do not charge storage. A. No. . . . Q. And in this particular case it has been testified that this plaintiff did not buy a ticket but came there with a cab and demanded her baggage. Now if the trunk had been found and had remained in your place more than twenty-four hours, you would unquestionably

have charged storage upon it, would you? A. If it had been there over twenty-four hours; yes." Where a bailment is one which is for the sole benefit of the bailor it is uniformly held that the bailee is obligated only to the exercise of slight care and is only answerable for gross negligence or bad faith: 5 Cyclopedia of Law and Procedure, 186; Story on Bailments, sec. 23. A bailee of this class is not bound to ordinary diligence, is not responsible for that care which every attentive and diligent person takes of his own goods, but is "only liable for gross negligence, dolo proximus, a practice equal to a fraud;" it is that omission of care which even the most inattentive and thoughtless men take of their own concerns: Tompkins v. Saltmarsh, 14 S. & R. 275; First National Bank of Carlisle v. Graham, 79 Pa. 106. We cannot agree that this is the measure of defendant's responsibility, because we cannot agree that the acceptance by a railroad company of the baggage of an intending passenger and depositing the same in the place provided by it for the purpose of checking and for safe-keeping meantime constitute a bailment for the sole benefit of the intending passenger. No New York decision that such is the law of that state has been called to our attention, and we think it is inferable, from the principles recognized and applied in the decisions of the courts of that state in analogous cases, that it is not the law. Therefore, the defendant's third proposition above stated is not sustained.

Before discussing the other two propositions it is advisable to notice the question as to the burden of proof and the prima facie presumption of negligence, which is raised by the fifth assignment of error. In determining this question it is unimportant whether the defendant as to the trunk was responsible as carrier or as warehouseman. In either case the general rule would apply that an unexplained loss of the property in the hands of the bailee gives rise to a presumption of negligence, where the bailment is for the mutual benefit of the bailor and bailee and the duty of exercising ordinary care exists. See Hoyt

v. Clinton Hotel Company, 35 Pa. Superior Ct. 297. In a New York case, where the defendant was at least subject to the duty and responsibility of a warehouseman, the court said: "When there is a total default to deliver the goods bailed, on demand, the onus of accounting for the default lies with the bailee: Platt v. Hibbard, 7 Cowen, 497–500, note a; Schwerin v. McKie, 28 N. Y. Super. Ct. 404, and cases cited. It is claimed that the failure to produce the trunk, and the charge of negligence is fully met by the evidence produced on the part of the defendants, that the building used for storing baggage was safe and secure and in charge of trusty agents and servants, and properly guarded night and day. There was no evidence as to how this particular trunk got out of the possession of the Hudson river company. If it had been burned or stolen, without fault on their part, the defendants would not have been liable. The evidence certainly shows a commendable vigilance in the general arrangements to protect this class of property, but it fails to point out how or by what means this trunk was lost. The inference that it was delivered to the wrong person by mistake is quite as legitimate as that it was stolen. To say that the servants were generally careful, does not establish as a question of law, that they were not careless in respect to this article. It was incumbent on the defendants to show that the loss of this trunk was not attributable to the want of care of their servants, and the evidence was such that the referee was justified in finding that they had failed to do it. If this trunk was delivered to the wrong person the circumstances should have been shown, otherwise it would have been presumed negligent, as no such delivery would be proper without the presentation of a duplicate check or satisfactory evidence of its loss, and of the ownership of the property. If the trunk had been delivered upon such evidence as vigilant, careful persons would regard as sufficient, the defendants might have been relieved from liability, but no evidence of this character was produced, and we think the finding of the referee was

fully warranted:" Burnell v. New York Central Railroad Co., 45 N. Y. 184. The same principle is recognized in other New York cases, and amongst those cited is Fairfax v. New York Central & Hudson River Railroad Co., 73 N. Y. 167. Having determined that the defendant was not a mere gratuitous bailee, it follows from the application of the principles of these cases, that the court committed no error in affirming plaintiff's third point and that portion of the second point quoted in the early part of this opinion. The effect of these instructions, taken in connection with what was said in the general charge, was not to bind the jury to find for the plaintiff, but to submit to the jury the question whether the defendant had failed to exercise ordinary and reasonable prudence in the care of the plaintiff's trunk, with appropriate instructions as to the burden of proof. The verdict, therefore, implies that the loss of the trunk was due to the defendant's neglect to exercise that degree of care and diligence.

We come then to the difficult question raised by the appellant's first and second propositions, which may be considered together. The necessity of determining this question arises from the provisions of sec. 38, chap. 429, of the laws of New York, approved June 6, 1907, and known as the "Public Service Commissions Law of New York," which was duly offered in evidence. The section is entitled "Liability for damage to property in transit." As counsel for the defendant correctly say, the first three sentences of the section clearly relate to freight, and not to baggage. The fourth sentence relates to baggage and reads as follows: "Every common carrier and railroad corporation shall be liable for loss, damage and injury to property carried as baggage up to the full value and regardless of the character thereof, but the value in excess of $150 shall be stated upon delivery to the carrier, and a written receipt stating the value shall be issued by the carrier, who may make a reasonable charge for the assumption of such liability in excess of $150 and for the carriage of baggage exceeding one hundred and fifty pounds

in weight upon a single ticket. Nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." The scope of the article to which sec. 38 belongs is thus defined in sec. 25: "The provisions of this article shall apply to the transportation of passengers, freight or property from one point to another within the state of New York and to any common carrier performing such services." The clause would seem to relate to the liability of a common carrier as such, and perhaps, also, to its liability as a warehouseman, where its duty as a warehouseman grows out of the original contract of transportation, as, for example, where it has safely transported baggage to its destination but the baggage is not promptly called for and taken away by the passenger. See Burnell v. New York Central Railroad Co., 45 N. Y. 184. But in the absence of any authoritative decision by the courts of New York to the contrary, we venture the opinion that this clause of the statute cannot be construed to apply to a case where the railroad company assumed the duty of a warehouseman and did not assume a higher duty respecting baggage which was delivered to it and was lost through its neglect to exercise ordinary care. Is this such a case? It is argued by defendant's counsel, citing Moore on Carriers, sec. 54, p. 722, that the carrier's liability for the baggage of a passenger commences with the actual delivery of such to the carrier and its taking possession of the same, regardless of whether the passenger has procured a ticket or not, if he in good faith intended to become a passenger, and regardless of whether the baggage has been checked or not. But in the same connection the learned author says: "Except in cases where the delay in shipment is the fault of the carrier the carrier's liability is that of warehouseman only for baggage brought to the station or depot and voluntarily deposited there for safe-keeping and not for immediate transportation." So, also, it is said in 6 Cyclopedia of Law and Procedure, 670: "Where baggage is left with the carrier in anticipation of a journey not

about to be commenced, and to be called for and checked when the passenger is ready to begin his journey, the carrier is liable therefor as warehouseman only." The principle was recognized and applied in Murray v. International Steamship Co., 170 Mass. 166, as appears by the following excerpt from the opinion of LATHROP, J.: "The defendant received the plaintiff's valise on Saturday, not for immediate transportation, but for the convenience of the plaintiff, as the steamboat was not to sail until Monday. The defendant on Saturday entered into no contract with the plaintiff to carry the valise, and by a rule of the defendant, which we consider a reasonable rule, the valise could not be checked until a ticket should be presented. No ticket was presented until Monday, at which time the valise could not be found. On the facts stated, we are of opinion that the liability of the defendant was that of a warehouseman and not that of a carrier: Judson v. Western Railroad Corp., 86 Mass. 520; Barron v. Eldredge, 100 Mass. 455; Watts v. Boston & Lowell Railroad Corp., 106 Mass. 466." No New York case has been called to our attention which decides the precise question presented here; but the principle seems to be well established by the decisions of the courts of that state, so far at least as freight is concerned, that a carrier is responsible as such only when goods are delivered and accepted by him for immediate transportation in the usual course of business. The subject is quite fully discussed in London & Lancashire Fire Ins. Co. v. The Rome, etc., Railroad Co., 144 N. Y. 200. We quote in part what was said by EARL, J., in that case: "The liability of a railroad company as a common carrier of goods delivered to it attaches only when the duty of immediate transportation arises. So long as the shipment is delayed for further orders as to destination of the goods, or for the convenience of the owners, the liability of the company is that of warehouseman. The liability of a common carrier for goods received by him begins as soon as they are delivered to him, his agents or servants, at the place appointed or

provided for their reception when they are in a fit and proper condition and ready for immediate transportation. If a common carrier receives goods into his own warehouse for the accommodation of himself and his customers, so that the deposit there is a mere accessory to the carriage and for the purpose of facilitating it, his liability as a carrier will commence with the receipt of the goods. But, on the contrary, if the goods when so deposited are not ready for immediate transportation, and the carrier cannot make arrangements for their carriage to the place of destination until something further is done or some further direction is given or communication made concerning them by the owner, or consignor, the deposit must be considered to be in the meantime for his convenience and accommodation, and the receiver until some change takes place will be responsible only as a warehouseman." In the earlier case of O'Neill v. New York Central & Hudson River Railroad Co., 60 N. Y. 138, the rule was stated thus: "A carrier is responsible as such only when goods are delivered and accepted by him for immediate transportation in the usual course of business. If delivered, awaiting further orders from the shipper before carriage, he is, while they are so in his custody, responsible as a warehouseman." These cases, as appellant's counsel correctly say, are not on all fours with the present, and we do not say that the principle is applicable, without qualification, to every case where baggage is delivered by an intending passenger at the place appointed by the carrier for the reception and checking of such baggage. But that there may be a case where the responsibility of the carrier as such does not arise until the intending passenger gives direction as to the destination of the baggage, we think there can be no doubt. The Massachusetts case heretofore referred to furnishes a fair illustration, and we think, upon full consideration, that this is such a case. If, after the plaintiff had changed her mind as to going upon the journey, the trunk had been lost or destroyed, without failure on the part of the defendant to exercise ordinary care during the

reasonable time which, according to the course of business and usage of the company, she had to call for and take it away, it could scarcely be claimed that the company was liable for the loss. The more reasonable view to take of the case, under its peculiar and exceptional circumstances, is that during that time the company owed the duty of exercising ordinary care, but had not assumed the duty of exercising the extreme care devolving upon a common carrier. It follows that the case is not controlled by the provisions of the public service commission law of 1907; and it seems equally clear that the defendant was not a mere gratuitous bailee, but was liable as a warehouseman.

The question raised by the sixth assignment of error, so far as it relates to the value of the plaintiff's clothing contained in the trunk for use by her, as distinguished from what it could be sold for in the market, is answered by the decision in Fairfax v. New York Central & Hudson River Railroad Co., 73 N. Y. 167, where the court said: "The court did not err in charging the jury that the plaintiff was entitled to recover the full value of the clothing for use to him, in New York, and not merely what it could be sold for in money. The clothing was made to fit the plaintiff, and had been partly worn. It would sell for but little, if put into market to be sold for secondhand clothing, and it would be a wholly inadequate and unjust rule of compensation to give plaintiff, in such a case, the value of the clothing thus ascertained. The rule must be the value of the clothing for use by the plaintiff. No other rule would give him compensation for his damages. This rule must be adopted because such clothing cannot be said to have a market price, and it would not sell for what it was really worth."

The judgment is affirmed.