# CHARLESTON.

BANK OF HUNDRED v. COUNTY COURT OF WETZEL COUNTY.

Submitted October 2, 1923.    Decided October 30, 1923.

1.  DEPOSITORIES—*County Court, Acquiescing in Exchange of Bonds Held by Depository Bank, Deemed Holder of Substituted Securities.*

    The Bank of H., having been selected and appointed by the county court of W. county as a depository of county funds in accordance with Chapter 39, Code (Chapter 84, Acts 1915), while acting in this capacity under approved personal bond in the penalty of $50,000.00, secured by $15,000.00 county road bonds, $16,500.00 municipal bonds, and $18,500.00 U. S. Government 3½% bonds, exchanged through the clerk of the county court, for the $18,500.00 U. S. Government 3½% bonds a like amount of U. S. Government 4% bonds, and for $8,500.00 of the municipal bonds an additional $8,500.00 U. S. Govern-

ment 4% bonds, the substututed securities being deposited with the legal custodian (holding the original bonds) in lieu of the bonds thereby withdrawn; and thereafter, while the bank continues for a year to serve as such depository, these exchanges, known to the president and other members of the county court, remain unquestioned; the defendant will be treated as holding the substituted securities in lieu of those originally hypothecated.. (p. 744).

2. SAME—*Depository Bank Held Entitled to Recover Value of Securities Substituted by County Court.*

On the trial of an action by the bank against the county court for the value of such substituted securities, the bank introduced the following documents: an order of the county court entered three years previously in which the court states, answering the bank's demand for return of the securities, that a year before the same had been stolen by persons unknown to the court from a safe place of keeping and never recovered; a letter of the bank to the clerk of the county court, and letter from the clerk to the president of the court on the day following the alleged theft, showing that such happening had been reported by the custodian of the bonds; and also proved, in addition to the facts set forth in Point One that a part of the bonds alleged to have been stolen had been returned to it by the deputy clerk of the county court several years subsequent to the alleged theft, and after the institution of suit. The defendant without introducing any evidence proving its inability to return the bonds, or that they had been lost and never recovered, notwithstanding due care on its part, demurred to the bank's evidence. *Held:* That the bank is entitled to recover the value of the unreturned bonds. (p. 744).

Error to Circuit Court, Wetzel County.

Action by the Bank of Hundred against the County Court of Wetzel County. From an order sustaining a demurrer to its evidence, plaintiff brings error.

*Reversed, and judgment entered for plaintiff.*

*Thos. H. Cornett* and *Larrick & Lemon,* for plaintiff in error.

*W. J. Postlethwait, M. H. Willis,* and *Walter F. Ball,* for defendant in error.

LITZ, JUDGE:

The judgment complained of was entered, April 15th, 1922, by the circuit court of Wetzel county, sustaining demurrer

to plaintiff's evidence in an action of assumpsit wherein the plaintiff claims damages in the sum of $30,188.82, the value of certain United States government securities alleged to have been placed by plaintiff with defendant (but never returned) to secure the performance of plaintiff's duties as a depository of public funds for Wetzel county.

By its order of July 12th, 1916, the defendant, acting under Chapter 39, Code, (Chapter 84, Acts 1915), designated and appointed the plaintiff as a depository of public funds for Wetzel county with the privilege of qualifying in that capacity by executing approved bond in the penalty of not less than $50,000. On August 12th, 1916, the plaintiff filed with the clerk of the county court its bond in the penalty of $35,000.00, with the American Surety Company of New York as surety, conditioned for the faithful performance of its duties as such depository; and also deposited with said clerk, then or later, the sum of $15,000.00 of Church District, Wetzel county, road bonds, for which the following receipt was taken:

"Clerk's Office County Court,
Wetzel County, West Virginia,
September 9th, 1916.

"Received of Bank of Hundred, Hundred, West Virginia, fifteen (15) Church District Road Bonds each calling for $1,000.00, dated June 1st, 1916, aggregating $15,000.00, each bond having attached thereto sixty (60) $25.00 interest coupons. Bonds numbered and payable as follows:

"Nos. 81 and 82, due June 1st, 1927.

Nos. 89 to 96 inclusive, due June 1st, 1928.

Nos. 97 to 101, inclusive, due June 1st, 1929.

"Said bonds are deposited by said Bank of Hundred as collateral security in connection with a certain bond, executed (or to be executed) by it as a Depository of county and district funds which may be deposited by Sheriff of Wetzel County from time to time, in accordance with conditions of said bond.

"S. MYERS, Clerk.

"The above bonds have this day been deposited in safety deposit vault in New Martinsville Bank.

"S. M."

(Following in longhand): "Above bonds returned to Bank of Hundred, June 14th, 1919."

(Seal County Court, Wetzel County).

By order of October 9th, 1916, the county court approved the surety bond for $35,000.00, the hypothecation with its Clerk of the road bonds amounting to $15,000.00, and the qualification of plaintiff as such depository; the order reciting in this connection: "In addition to the $35,000.00 bond executed and filed by said Bank of Hundred, said bank *deposited with the clerk* of this court the sum of $15,000.00 Church District road bonds, which bonds are doposited in the safety deposit vault in New Martinsville Bank, and are to be held as additional security, making a total amount of $50,000.00"

Immediately after qualifying, plaintiff began, and continued uninterruptedly to May 6th, 1919, serving the county of Wetzel as depository of public funds. During this period large balances remained to the credit of the county for deposits made by its officials with the bank. In the meantime, the plaintiff desiring the cancellation of the surety company bond for $35,000.00, by furnishing negotiable securities to that amount of the character required by Section 53, Chapter 39, Code, on August 12th, 1917, executed its individual bond in the penalty of $50,000.00 for the faithful discharge of its duties, to be secured by the $15,000.00 Church District road bonds and additional securities, (deposited with the clerk), set forth in a second receipt:

"August 22, 1917. Received of S. J. Talkington, President of Bank of Hundred, Hundred, West Virginia, the following bonds, to be held by the County Court of Wetzel County, West Virginia, as collateral security on a certain bond executed by said Bank of Hundred on the 12th day of August, 1916, as depository for Wetzel county funds deposited from time to time by Sheriff of said county, amount of said bond being $35,000.00.

"Eighty (80) bonds of the Town of Hundred, each calling for the sum of One Hundred dollars, at 5% interest payable annually on the first day of August, and dated August 1st, 1908, numbering from one to eighty inclusive..................$ 8,000.00

"Seventeen Bonds of City of Follansbee, W. Va., dated Sept. 1st, 1911, numbering from one to seventeen, inclusive, calling for Five Hundred Dollars each at 5½% interest, payable September 1st, principal due September 1st, 1921, amounting to..    8,500.00

"Three U. S. Government certificates No. 13269,
13270 and 13271, calling for $5,000 each, 3½%
interest .................................... 15,000.00
  "Three (do) calling for $1,000 each.......... 3,000.00
  "One (do) calling for $500.................. 500.00
                                               _____
                                               $18,500.00
      "Total bonds .....................$35,000.00"

"The object of this deposit of bonds being to relieve surety
on above named depository bond, subject to approval of coun-
ty court at its next session.

"S. Myers, Clerk County Court."

Thereafter, September 1st, 1917, the county court entered
the following order, approving the substitution:

"Whereas, as such Depository, said Bank, on the 12th day
of August, 1916, executed a bond in the penalty of $35,000.00,
with American Surety Company of New York as surety; and,

"Whereas, said Bank of Hundred, on the 12th day of
August, 1917, entered into a new bond in the sum of $50,-
000.00 in lieu of the above named $35,000.00 bond; and,

"Whereas, said Bank of Hundred *has deposited with the
Clerk of this Court* the following described BONDS as se-
curity, to-wit:

"Three (3) U. S. Government bonds of $5,000.00 each,
bearing 3½% interest, numbering 13269, 13270 and 13271;

"Three (3) U. S. Government bonds of $1,000.00 each, bear-
ing 3½% interest, numbering 166152, 166153 and 1661541;

"One (1) U. S. Government bond of $500.00,
bearing 3½% interest, amounting in all to the
the sum of ...................................$ 18,500.00

"Seventeen (17) Bonds of the City of Follans-
bee, W. Va., numbering 1 to 17, each calling for
$500.00, bearing 5½% interest; and dated Sept.
1, 1911 .................................... 8,500.00

"Eighty (80) Bonds of the Town of Hundred,
West Virginia, dated August, 1908, numbering 1
to 80, inclusive, calling for $100.00 each and bear-
ing 5% interest .............................. 8,000.00

"And the following bonds heretofore deposited by said Bank of Hundred as additional security on said former Depository Bond:

"Fifteen (15) Church District Road Bonds of $1,000.00 each, numbering 81 and 82, 89 to 96 inclusive, and 97 to 101 inclusive, bearing 5% interest, amounting to ........................  15,000.00

"Total ............................ $ 50,000.00

and Whereas, the Court deems the said new bond sufficient for the purpose for which it is intended, said bond is hereby approved; and it is further ordered that said former bond on which American Surety Company of New York is surety, be and the same is hereby declared null and void and of no further effect from and after this date."

On or about the 31st day of January, 1918, the plaintiff delivered to the clerk of the county court $18,500 United States Government 4% (Second Liberty Loan) bonds, in lieu of the United States Government 3½% (First Liberty Loan) bonds in that amount, theretofore *deposited with the clerk,* as shown by the clerk's receipt of August 12th, 1917, and the order of the county court of September 1st, 1917.

A memorandum evidencing the transaction, signed by the clerk, states:

"Mr. C. E. Clovis, Cashier          "January 31st, 1918.
     Bank of Hundred,
          Hundred, West Virginia.
Dear Sir:

"Following is list of United States 4% Government (or Second Liberty Loan) Bonds deposited by Bank of Hundred in exchange for former issue of 3½% Government Bonds, which Bonds, amounting to $18,500.00, are held in Wetzel County Bank, of New Martinsville, West Virginia, for Wetzel County, as collateral security on Depository Bond of said Bank of Hundred:

"(3)   $500.00 Nos. 355169 to 355171, inc......$   1,500.00
 (5)   $100.00 Nos. 993428 to 993432, inc.....      500.00
 (7)   $500.00 Nos. 148664 to 148670, inc......    3,500.00
 (13)  $1000.00 Nos. 158525 to 158537, inc.....   13,000.00

          Total Amount ...................... $ 18,500.00

"I hereby certify that the foregoing statement is correct."

March 2d, 1918, the plaintiff, through the City Bank of Wheeling, West Va., also delivered to the clerk of the county court $8,500.00 United States government 4% (Second Liberty Loan) bonds, in lieu of $8,500.00 bonds of the City of Follansbee, theretofore deposited with the clerk, as shown by letter of the clerk as follows:

"Cashier the City Bank of Wheeling, West Virginia,
       Wheeling, West Virginia.
"Dear Sir:

"By direction of the Bank of Hundred, I herewith enclose $8,500.00 City of Follansbee 5½% Improvement Bonds, bearing date September first, A. D., 1911, and numbering from one to seventeen, inclusive, calling for $500.00 each. These bonds are sent you in exchange for a like sum of United States Liberty Loan Bonds, numbering from 139195 to 139202, of $1,000.00 each, and from 631964 to *831968,* inc., of $100.00 each, or $8,500.00 in all, receipt of which I hereby acknowledge.

                    "Respectfully yours,
                              "S. MYERS, Clerk."

"The above described Liberty Bonds have this day been deposited with Wetzel County Bank for safekeeping.
                              "S. M."

Immediately following a 'phone communication between them, April 6th, 1918, plaintiff wrote the clerk of the county court:

"Mr. S. Myers, Clerk,
     New Martinsville, West Va.
Dear Sir:

"In reference to bonds which you 'phoned us about, stating that the Wetzel County Bank had been burglarized and that our Liberty Bonds which you hold as collateral on County Depository funds, had been stolen, would advise that the numbers of the same are as follows:

| (3)  | $ 500.00 Nos. 355169 to 355171, inc........$ | 1,500.00 |
| (5)  | $ 100.00 Nos. 993428 to 993432, inc....... | 500.00 |
| (7)  | $ 500.00 Nos. 148664 to 148670, inc....... | 3,500.00 |
| (13) | $1000.00 Nos. 158525 to 158537, inc....... | 13,000.00 |

               Total amount ........................$ 18,500.00

"The above is certified copy of Bond numbers which you gave us under date of January 31st, 1918, these having been received there by the Wetzel County Bank in exchange for like amount of Interim Certificates.

"We also had deposited with you eighty-five hundred dollars worth of Liberty Bonds which were sent you by the City Bank of Wheeling, in exchange for the City of Follansbee, West Va., bonds which were previously held as collateral. These bonds were numbered as follows:

(8)   $1,000.00 Nos. 139195 to 139202, inc.......$  8,000.00
(5)   $  100.00 Nos. 631964 to 631968, inc.......      500.00
          Total  ..............................$  8,500.00

"I could not hear you very distinctly today but I understood you as suggesting that we notify our correspondent banks of the theft, giving them the number of bonds that were stolen and to be on the lookout.

"We shall do this immediately."

On the same date the clerk, by letter, advised J. M. Berdine, President of the County Court:

"Hon. J. M. Berdine,
      Pres. County Court,
          Wetzel County, West Va.
"Dear Sir:
"It is my sad duty to inform you that some person or persons broke in Wetzel County Bank some time last night, and among other things secured the following bonds that were held by County Court as collateral security on Depository Bond of Bank of Hundred:

"80 bonds of the town of Hundred, calling for $100.00 each, payable annually on the 1st day of August, and dated August 1, 1918, numbering from 1 to 80, inclusive..............................$  8,000.00

"8 First Liberty Loan Converted Bonds, numbering 139195 to 139202, inclusive, $1000 each....    8,000.00

"5 First Liberty Loan Converted Bonds numbering from 631964 to 631968, inclusive, $100 each      500.00

"(The above mentioned bonds being amount received in exchange from City Bank of Wheeling for like amount of bonds of Follansbee).

"28 U. S. Second Liberty Loan 4% bonds as follows:

```
 3—$  500 Bonds No. 355169 to 355171, inclusive. .$  1,500.00
 5—$  100    ''  No. 993428 to 993432,      ''   ..    500.00
 7—$  500   ·''  No. 148664 to 148670,      ''   ..  3,500.00
13—$1000     ''  No. 158525 to 158537,      ''   .. 13,000.00
```

                Total amount .......................$ 35,000.00

"Assistant Cashier Woods informed me that they would take necessary action to recover the lost property, but it might be well for the Bank of Hundred to get in touch with other banks with which they have been doing business."

Notwithstanding the alleged theft, on April 5th, 1918, of which the clerk immediately notified the plaintiff and president of the county court, the plaintiff continued to serve as depository for the county, without being requested to furnish other bond or securities; nor was any notice of the supposed loss conveyed by either the plaintiff or the county court to the other until May 6th, 1919, when the court, in its order of that date, offered this as one reason for its failure to deliver these securities to plaintiff. The court made no answer to the plaintiff's first demand, April 21st, 1919, as will appear from its order of that date, as follows:

"This day appeared Bank of Hundred by T. H. Cornett and D. V. Lemon, its attorneys, and G. W. Coffield, Prosecuting Attorney for Wetzel County, and T. H. Cornett, on behalf of said Bank of Hundred, presented a check, payable to the order of J. O. Eakin, Sheriff of Wetzel County, calling for $1235.41 in settlement of all money due Wetzel County as Depository and tendered an order to be entered by the court as to the demand of the said Bank on said County for release and delivery to the said Bank, of bonds of the par value of $50,000.00 owned by the Bank and heretofore deposited by the Bank as security as a depository, or the value thereof, which matters are taken under advisement by the court and case continued until May 1st, 1919. Ordered that court adjourn until May 1st, 1919. W. T. Francis, President."

The following is the county court's order of May 6th, 1919, in which it offers, for the first time, justification for non-delivery of the $35,000.00 securities:

"This day came the Bank of Hundred, a banking corporation organized under the laws of the State of West Virginia,

by its counsel, Thomas H. Cornett and D. V. Lemon, and presented to the court its Cashier's check for the sum of $1,235.41, payable to J. O. Eakin, Sheriff of Wetzel County, as payment in full of balance due County of Wetzel from said Bank by reason of said Bank having been designated and used as one of the depositories of public funds under and by virtue of the laws of the State of West Virginia, and also moved the Court to release all the bonds and securities of every kind and description heretofore hypothecated and delivered to the County Court of Wetzel County as security by said Bank as such depository of public funds and also to surrender and deliver to said Bank all of said hypothecated bonds and securities. Also came G. W. Coffield, Prosecuting Attorney, and M. H. Willis on behalf of said County Court of Wetzel County and the motions and matters hereinbefore set forth were argued by counsel and submitted to the court.

"On consideration of which the Court finds and so orders and adjudges that the said The Bank of Hundred is indebted to the County Court of Wetzel County in the sum of $1,235.41 as of this date and that the said check heretofore mentioned be and is accepted by this Court and J. O. Eakin, Sheriff and Treasurer of Wetzel County, as payment thereof.

"The Court doth further find and so orders and adjudges that the said Bank of Hundred is not a depository of public funds of Wetzel County and that no public funds of Wetzel County be deposited therein.

"The Court doth further find and so orders and adjudges that it does not have any claim or right to or lien upon any bonds and securities heretofore deposited with the Clerk of this Court by the said Bank of Hundred and the Clerk of this Court may, if he so desires, deliver to the said Bank of Hundred, without liability to this Court, any and all bonds and securities in his possession or control to said Bank of Hundred.

"And as to the further motion of the said Bank of Hundred for the delivery to it by this Court of certain bonds and securities the Court doth overrule the same for the following reasons:

"1st,—That said bonds and securities were not duly and legally hypothecated to and with this Court and were not delivered by said Bank into the possession and custody of the legal custodian of hypothecated securities.

"2nd,—If said bonds and securities were duly and legally hypothecated to and with this Court and were delivered by said Bank into the custody and control of the legal custodian of such hypothecated securities, the same and every

part thereof, were on the night of April 5th, 1918, feloniously and burglariously taken from the vaults and custody of the Wetzel County Bank by persons then and now unknown to this Court and the same have not since that time been located, discovered or returned to said Wetzel County Bank or to any one entitled to the custody thereof and their present whereabouts is, to this Court, unknown. The said Wetzel County Bank and its vaults were, on said 5th day of April, 1918, a safe place for the keeping and custody of said securities; and so the same have, without fault on part of this Court, become stolen and lost to the use of their rightful owners.

"The Bank of Hundred further moved the County Court to account for and pay to said Bank the principal sum of said bonds and securities together with the proper interest thereon to this date, which motion the said County Court is of opinion to and doth overrule for the reasons heretofore assigned for overruling the motion for the delivery of said bonds and securities.

"The said Bank of Hundred, by counsel, excepts to the foregoing rulings and each of them save that relating to the indebtedness of the said Bank of Hundred to this Court and moves for the entry of the order prepared by its counsel and filed with the Clerk on the 21st day of April, 1919, endorsed as follows: 'Filed 4/21/19, S. Myers, Clerk. Application for release on Depository Bond, etc.' To the entry of the last mentioned order and to each and every part thereof, the said G. W. Coffield, Prosecuting Attorney and M. H. Willis objects and on consideration whereof, the Court doth overrule said motion, to which ruling of the Court the Bank of Hundred excepts, and on its motion its said order is hereby filed and made a part of the papers in this cause.'"

The belated explanation of the defendant, contained in the foregoing order, is not entirely satisfactory or straightforward. It shows, impliedly at least, the selection by the county court of the Wetzel County Bank as custodian for securities hypothecated by depositories under Section 53, Chapter 39, Code. The denial therein that defendant ever had legal custody of the $35,000.00 securities alleged to have been stolen is, as respects the $8,000.00 Town of Hundred bonds, in conflict with the previous order of September 1st, 1917, declaring the defendant's custody through delivery to its clerk. From the evidence introduced by plaintiff it sufficiently appears:

(a)    That the Wetzel County Bank was custodian, selected by defendant, of the $35,000.00 securities acknowledged by the order of September 1st, 1917, to be in the custody of defendant; and in the exchanges of $27,000.00 of these securities on January 31st and March 2d, 1918, for the bonds in controversy the latter were deposited with that bank in lieu of the securities thereby withdrawn.

(b)    That as shown by the order of September 1st, 1917, the $8,000.00 Town of Hundred bonds came into the legal custody of the defendant, through delivery, by plaintiff, to its clerk.

(c)    That the $8,000.00 municipal bonds of the Town of Hundred, alleged to have been stolen along with the $27,000.00 U. S. Government 4% bonds, now in suit, were returned to the plaintiff by the deputy clerk of the county court, February 7th, 1922, after the institution of this action.

(d)    That none of the $27,000.00 U. S. Government 4% bonds have been returned to the plaintiff in compliance with its demands set forth in the orders of the county court of April 21st and May 6th, 1919.

The defendant, without offering proof, demurred to plaintiff's evidence, relying upon the ex parte statements in its order of May 6th, 1919, as constituting two grounds of defense:

(1)    That is never came into legal custody of the securities in question; and,

(2)    That they were stolen from the Wetzel County Bank, which was a safe place for their keeping.

Under the first proposition, it is asserted that the acceptance by the clerk of other securities in exchange for those approved by the county court involved the exercise of a non-delgable discretion of the court.    But no distinction is made, in Section 53, Chapter 39, among the securities to be accepted from depositories in lieu of surety bonds, which include. ''Interest bearing securities of the United States, or a state, county, district, or municipal corporation, the indebtedness whereof does not exceed five per cent. of the existing valuation''.

The plaintiff continued thereafter for more than one year to serve as such depository with knowledge to the president and members of the county court of these exchanges, without complaint from any one that the securities thereby had been reduced or legally effected.

What injury was, or could have been, done the county by such exchanges of the securities? If the bank had defaulted the county certainly would have been entitled to proceed against the substituted securities, which afforded ample protection.

The defendant bases its second proposition upon a rule of evidence, contending the ex parte statements in its order of May 6th, 1919, that on the 5th day of April, 1919, the securities were stolen by persons unknown to defendant from the vaults and custody of the Wetzel County Bank, a safe place of keeping, and had not been found, was sufficient answer to plaintiff's demand for their return; and that the burden of proof thereby had been forever cast upon the plaintiff to establish negligence by the defendant.

This contention rests upon the rule announced by some decisions, that if the bailee *proves* the property was *stolen,* or destroyed by fire, or accounts for his failure to return in any other way, which does not on its face involve negligence or call for further explanation, the bailor must prove negligence. See 3 R. C. L. 151; 6 C. J. 1160.

The cases of *Chaflin* v. *Meyer,* 75 N. Y. 260, *Knights* v. *Piella,* 111 Mich. 9, *Erie Bank* v. *Smith,* 3 Brewst. (Pa.) 9, *Bissel* v. *Harris,* (Nebr.) 95 N. W. 779, *Lampley* v. *Scott,* 24 Miss. 528, *Madan* v. *Covert,* 13 Jones & S. 245, *Schmidt* v. *Blood,* 9 Wend. 268, 24 Am. Dec. 143, and *Wylie* v. *Northampton National Bank,* 119 U. S. 261, are cited as sustaining this rule. In all of these cases (excepting possibly the first named), the *fact,* and *circumstances,* of the theft were *clearly proven;* so that the decisions were not controlled by presumptions of law. None of those cases bears analogy to the one at bar, which involves mere alleged loss of the pledged property by theft, without explanation. As stated in the case of *Chaflin* v. *Meyer, supra,* "It is not of course intended to hold that a warehouseman (or other bailee) refusing to deliver goods

can impose any necessity of proof upon the owners by merely alleging, as an excuse, that they have been stolen or burned. These facts *must appear* or be *proved with reasonable certainty.*''

In view of the facts that part of the bonds alleged to have been stolen have since been returned to the plaintiff; that defendant does not show its inability to deliver the rest; and that the defendant never gave notice to the plaintiff of the alleged loss, nor in continuing the plaintiff as such depository for more than one year thereafter made complaint that the securities had been reduced; can we say that the statements of the county court's order of May 6th, 1919, together with the letters of plaintiff to the clerk and of the clerk to the president of the county court, April 6th, 1918, respecting a reported loss, establish with reasonable certainty such loss of the certificates in controversy by theft on April 5th, 1918?

Referring to the rule relied on, the author, in 3 R. C. L., page 152, observes: ''An examination of the authorities, however, discloses expressions of doubt and dissatisfaction concerning the rule that, as soon as the bailee proves loss or injury by fire or other means, the burden then rests on the bailor to prove negligence. Thus, it has been held that while it is true, as a general proposition, that a bailor charging negligence on the part of a bailee rests under the burden of proof, yet oftentimes slight evidence will shift the burden to the bailee. And in other jurisdictions the rule has been laid down that while the bailor must prove delivery to the bailee and his refusal to return as required by the contract of bailment, thereafter the burden is on the bailee to prove that he has not converted the property, and this he may do by showing its loss and the manner of its loss. But by the manner of loss such courts mean not only the isolated fact of destruction by fire, or loss by theft or otherwise, but the circumstances connected with the origin of the fire or other cause of loss or injury as far as known to the bailee, and the precautions taken to prevent the loss or injury, and from these facts, coupled with any testimony on the subject that the bailor may introduce, they hold that it is for the jury to say whether the bailee was negligent.''

The proof of loss by theft, under the rule in question, leaves

the case without presumption, depending upon other facts and circumstances to establish negligence against the bailee. *Erie Bank* v. *Smith*, cited; note to *Ware* v. *Squyer* (Minn.) 83 A. S. R. 390.

If, however, the loss by theft or burglary were clearly proven, no effort whatever by defendant for their recovery is shown; not even notification to plaintiff of the supposed loss.

"The pawnee must not, therefore, go to sleep or fold his hands when such occurrences take place, and say: 'I have done everything in my power up to this time, and there is nothing left for me to do'. He is bound to exercise ordinary diligence, and take all those measures which are ordinary and proper for the purpose of recovering the property". *Erie Bank* v. *Smith*, cited.

In the case of *Myers* v. *Summerville*, 90 W. Va., 486, the defendant proved that the pledged bonds could not be found in its safe where they had been placed for safekeeping. This was held to be insufficient to relieve the pledgee, the opinion in the case stating: "The company (pledgee) made no effort to show how it lost the bonds. All it did was to show that it did not have them. It offered no excuse for their loss". In this case the defendant does not show how the loss occurred, nor that it did not have the bonds; relying for defense upon an alleged condition existing several years previous to trial.

We must conclude, therefore, that the bonds in question having been placed with the custodian selected by defendant for hypothecated securities, under Chapter 39, Code, and no sufficient excuse being offered for defendant's failure to return the same, the plaintiff is entitled to a judgment against the defendant for the amount agreed on, and found by the jury, as their value, to-wit, the sum of $30,188.82, with interest from date of the verdict.

*Reversed; judgment for plaintiff.*